### STATE v. PEAK

. (183 S. E., 31)

1. HOMICIDE—TRIAL JUDGE HAS DISCRETION TO DETERMINE WHETHER TESTIMONY OF DECEASED'S REPUTATION IS CONNECTED IN POINT OF TIME SO AS TO BE ADMISSIBLE IN MANSLAUGHTER PROSECUTION.—Trial Judge has discretion to determine whether testimony as to deceased's reputation is sufficiently connected in point of time as to .be admissible in manslaughter prosecution.

2. HOMICIDE—TRIAL COURT HELD NOT TO HAVE ABUSED ITS DISCRETION IN EXCLUDING TESTIMONY IN MANSLAUGHTER PROSECUTION . AS TO ACTS OF DECEASED OCCURRING SOME TIME BEFORE AS ESTABLISHING BAD REPUTATION.—Trial Court *held* not to ·have abused its discretion in excluding testimony in manslaughter prosecution relative to acts of deceased occurring some time before, introduced for purpose of showing bad reputation.

3. INDICTMENT AND INFORMATION.—Indictment for manslaughter need not allege precise date of offense, and amendment showing proper date *held* properly allowed.

4. INDICTMENT AND INFORMATION.—It is not necessary to prove precise date in indictment, except where time enters into nature of offense, or is made part of description.

5. CRIMINAL LAW—CHARGE THAT DEFENDANT MUST HAVE BEEN WITHOUT FAULT IN BRINGING ABOUT IMMEDIATE DIFFICULTY HELD PROPERLY GIVEN IN MANSLAUGHTER PROSECUTION, IN VIEW OF ENTIRE CHARGE SETTING OUT DEFENDANT'S RIGHTS.—In manslaughter prosecution, charge that defendant must have been without fault in bringing on immediate difficulty *held* properly given when read in connection with entire charge, fully charging jury as to defendant's rights.

6. HOMICIDE—TRIAL JUDGE, IN MANSLAUGHTER TRIAL HELD NOT TO HAVE ABUSED DISCRETION IN EXCLUDING RECORD OF INDICTMENT OF DECEASED FOR BURGLARY OF DEFENDANT'S HOME, HOLDING, IN EFFECT, CHARGE WAS NOT SUFFICIENTLY CONNECTED IN TIME AND CIRCUM- STANCES TO BE SUBMITTED AS EVIDENCE AFFECTING SELF-DEFENSE.— In manslaughter prosecution, trial Judge *held* not to have abused discretion in excluding evidence of record showing indictment of .deceased for burglary of defendant's home as holding, in effect, that charge was not sufficiently connected in point of time and circumstances to be submitted as evidence, as showing act of violence toward defendant, showing state of mind affecting right of self-defense.

Before FEATHERSTONE, J., Richland, January 1925. Affirmed.

Lee Peak was convicted of manslaughter and he appeals.

The charge of the trial Court, directed to be reported, is as follows:

The Court: Mr. Foreman and Gentlemen of the Jury: You are the sole judges of the facts in this case, and, when I say judges, I use that word advisedly, for you are the judges. Every man on that panel for the purpose of trying this case and finding what the facts of this case are is a judge, and his responsibility as a judge of the facts is just as high and just as great as that of the presiding Judge.

The sole object of your inquiry in this case, as in every case, is to find the truth, and, when you find that truth, put that in the form of a verdict, regardless of who it may help or who it may hurt. The theory of the law is that you have got twelve honest minds on that jury, each of whom is going out in search of the truth. Truth is the point towards which you are steering all the way through, and your chart and compass in endeavoring to reach truth is the law and the evidence.

Mr. Foreman and gentlemen, this indictment charges murder, and it will be competent under this indictment to find one of four verdicts. If you write the word "guilty" on the back of this indictment, that will mean guilty of murder, and death by electrocution will follow.

If you write the word "guilty", and add to that the words, "recommended to the mercy of the Court," that will mean guilty of murder, but the punishment will be reduced from death by electrocution to lifetime imprisonment.

If you write the words "guilty of manslaughter," that will mean that the punishment will be not more than 30 years in prison, or not less than 2 years, in the discretion of the Court. If you write the words "not guilty," that means the defendant goes free.

It is necessary, therefore, at the outset, that I define to you what murder is.  Murder is the unlawful killing of a human being with malice aforethought, either express or implied.  There must be malice at the time that the fatal injury is inflicted, before it can be murder.  Murder is a deliberate killing, one which is done with a sedate mind and a formed design.  Without malice existing at the time of the fatal injury, there can be no murder—no malice, no murder.

Now, I am not going to undertake to give you any other definition of murder, because my impression is that in charging long definitions, instead of clarifying the jury, it frequently confuses them.  A killing in malice is murder.  That is the highest grade of homicide.

Now, there is another grade of homicide, a lower grade. and that is manslaughter.  And what is manslaughter? Manslaughter is an unlawful killing of a human being in sudden heat and passion, upon a sufficient legal provocation.  The law does not excuse a killing, because it is done in sudden heat and passion, but out of due regard it has for the frailties and weakness in human nature, it says where there is a killing in sudden heat and passion, upon sufficient legal provocation, it is a lower grade of homicide than murder, and, therefore, makes the punishment less.  That is manslaughter.

Now, then, I come to the plea of self-defense.  The defendant pleads self-defense, and, therefore, under the law, he who pleads self-defense admits the killing, and takes the burden upon himself to satisfy a jury, not beyond a reasonable doubt, but by the greater weight or preponderance of the evidence, that it was necessary, or apparently necessary for him to do the killing, in order to save himself from serious bodily harm or from death.  The burden is upon the defendant to make out his case of self-defense by the greater weight or preponderance of the evidence.

Now, you don't determine, Mr. Foreman, preponderance of the evidence necessarily by the greater number of witnesses, but preponderance of the testimony is determined by the weight which you give to the testimony of the witnesses.

Now, then, there are four things—four requisites to sustain a plea of self-defense. What are they? And the defendant must make out all four of them by the greater weight or preponderance of the evidence.

First, the defendant must have been without fault in bringing about the difficulty—I mean the immediate difficulty; that which results in death. The law does not allow a man to be at fault in bringing about a difficulty and bringing the necessity to kill on himself, and then take advantage of the plea of self-defense. He must have been without fault in bringing about the difficulty. That's No. 1.

What is No. 2? He must have believed at the time that he fired the fatal shot that he was in danger—in imminent danger of losing his life or of receiving serious bodily harm. Not only must he have believed so, but we take then No. 3. A man of ordinary prudence, firmness, and courage, situated as he, must, in the judgment of the jury, have been justified in so believing—in so believing.

And No. 4 is: He must have avoided the difficulty if he could do so with reasonable safety to himself. The law does not require a man to retreat or avoid the difficulty, where by so doing he has increased his danger. There must be a reasonably safe, or apparently reasonable safe, means of escape before the law requires him to avoid the difficulty.

Now, Mr. Foreman and Gentlemen of the Jury, if he has made out all four of those requisites by the greater weight or preponderance of the evidence, then that constitutes a complete and perfect defense, and you have nothing to do except to write a verdict of not guilty. It is a question for you to say under all the evidence, as applied to the law which

I have given you, whether or not he has so made out his case of self-defense.

Now, then, I charge you as to the law of appearances. A man has a right to act on appearance. The necessity may be either real, or may be apparent. For illustration, if I draw a double barrel shotgun on you. It may be empty, but you don't know it. You have the right to act on appearances. And, if the jury believe that the circumstances and situation was such as to make the defendant believe that there was the necessity there, that his life was in danger, or he was in danger of receiving serious bodily harm, if that necessity was there, according to his view, whether it was real or apparent, and if the jury believe further that a man of ordinary prudence, firmness, and courage, situated as he was, would have so believed, then that is all that is necessary.

Now, then, counsel has indicated that he wants me to charge you with reference to a case where there is bad blood between the parties, or where one is known to be a dangerous or violent man.

Now, I charge you, Mr. Foreman and Gentlemen of the Jury, a man hasn't got a right to shoot another simply because he has a bad reputation for violence. Neither does he have a right to shoot him down for the reason that the man doesn't like him, or there is bad blood between the parties, but the law takes a reasonable view of the matter, and it says, Mr. Foreman, if a man has a bad reputation for violence, and you know it, then you have a right to construe his actions more harshly, and sometimes to act more hastily (strike out sometimes)—for a man to act more hastily. And so, if there is bad blood between them, you have a right to act more harshly and more hastily than otherwise.

Now, there is another matter that I want to charge you about. Mr. Foreman, if you and I have a difficulty and fight, and that fight is over and we separate, and after we separate I have time to cool—I have time to cool, and after

I have had time to cool—I go back and renew that difficulty and kill you, simply for the purpose of avenging any injury which you have inflicted on me, that is murder. It is a question for the jury to say whether or not sufficient cooling time has elapsed. But, Mr. Foreman and Gentlemen, if I have not had sufficient time to cool, if the injury which you inflicted on me still makes me smart, and makes the blood run hot through my veins, and I go back and renew the difficulty, and kill you, without having sufficient cooling time, then the law says that is not murder, but manslaughter.

Now, it is a question of fact for you to say whether or not there was any previous difficulty, and whether or not sufficient cooling time had elapsed. All of those are questions of fact for you to determine under the evidence. Now, then, Mr. Foreman and Gentlemen, I told you where the burden is with reference to plea of self-defense.

Now, the burden all the way through the case is on the State to satisfy you of the guilt of the accused beyond a reasonable doubt. Mark you, I didn't say doubt. I said reasonable doubt, and a reasonable doubt in law is a strong substantial doubt arising from the evidence. If you have that kind of doubt, you are bound to give it to the defendant at every stage and on every phase of the case. If you have a reasonable doubt as to whether or not he has made good his plea of self-defense, then you have a reasonable doubt on the whole case, and you must give him the benefit of it. If you have a reasonable doubt as to whether or not he is guilty of murder or manslaughter, give him the benefit of it, and convict him of the lower offense. If you have a reasonable doubt as to whether or not he is guilty, or not guilty, give him the benefit of that doubt and acquit him.

Is there anything else, Mr. Graydon?

Mr. Graydon: No, sir.

The Court: Now, let's see if you are perfectly straight on the forms of your verdict. Mr. Solicitor, I see a memo-

randum there in pencil under the word "verdict"—probably you had better erase that.

The Solicitor: Yes, sir.

The Court: If you write the one word "guilty," Mr. Foreman, that means guilty of murder, and that means death by electrocution.

If you write "guilty, with recommendation to the mercy of the Court," that means guilty of murder, and that will automatically reduce the punishment from death to lifetime imprisonment.

If you write the words "guilty of manslaughter," that will mean imprisonment for not more than 30 years, or not less than 2 years. And I am going to say to you, Mr. Foreman and Gentlemen, although I will not be bound by it, it is a matter within my discretion, if you desire in your judgment, under the law and evidence, if you convict the defendant of manslaughter, you may add the words "to the recommendation of the Court," if you see fit to do so.

The fourth verdict is "not guilty," which would mean the defendant goes free.

Take the record, Mr. Foreman, and find a verdict which speaks the truth under the law and evidence. The very word verdict means "truth." Give the jury the record.

Thereafter, and in due time, notice of intention to appeal was served.

*Mr. C. T. Graydon,* for appellant, cites: *Immaterial amendments of indictment by the Court:* 33 S. C., 111. *Self-defense; duty to retreat:* 118 S. C., 164; 104 S. E., 664; 113 S. C., 154. *Admissibility in evidence of previous acts of violence by deceased against defendant:* 129 S. C., 166; 123 S. E., 217; 86 S. C., 323; 68 S. E., 563; 82 S. C., 394; 78 S. C., 90; 58 S. E., 974; 73 S. C., 257; 53 S. E., 423; 72 S. C., 74; 51 S. E., 524; 43 S. C., 52.

*Mr. A. F. Spigner,* Solicitor, for respondent.

May 5, 1926.

The opinion of the Court was delivered by MR. ACTING JUSTICE PURDY.

On January 14, 1925, the appellant, who is a white man, was charged with killing and murdering Preston Branch, a Negro. He was convicted of manslaughter, and this appeal is from the judgment pronounced upon the sentence. The testimony, both as to the acts concerning the killing and the acts, at an earlier hour of the day, which preceded the killing, is conflicting.

The appellant, with another white man, and the deceased, with Tom Brown, another Negro, some time during that morning met together in the road. . The testimony on the part of the State tends to show that the appellant, at his own instance, engaged in wrestling with Tom Brown, whereas the appellant claims that he met these parties in the road and that after talking with them, and after the white man who was with him had withdrawn for a short distance, both the deceased and Brown assaulted him and beat him and stamped him, leaving him unconscious.

The testimony, taken in connection with the circumstances, tends to show that the appellant was drinking, and, from the actions of all the parties concerned, the circumstances point to the conclusion that the gathering of these people at the point in question was for the purpose of obtaining liquor from some one in that neighborhood.

The defendant was carried away from this scene of action in a truck by another white man by the name of Ford, and was taken to the home of appellant's father, where it appears he drank some coffee, and then went on home. Remaining at his home for a while, he took his shotgun and a number of shells and left, stating that he was going to help another white man hunt a cow. Soon afterwards he came up with the deceased, who was in a road cart with Tom Brown, and, it is claimed, a third Negro named McCoy. The other occupant or occupants of the cart left the deceased in the cart. One purporting to be an eyewitness of the

killing testified that the appellant caused the deceased to throw certain articles out of his pocket on the ground, and then told him to throw up his hands, and, this being done, the appellant shot the deceased in the throat.

The appellant, on the other hand, stated that, when he approached the deceased, the deceased reined up the mule with his left hand close to his neck, and put his right hand behind his back, and reached back in his pocket as if for a gun, and that, fearing for his life, the appellant shot the deceased with a shotgun. Appellant also stated that the Negro Brown only was with the deceased, and that Brown jumped out of the cart and ran. Branch died on the Monday night following, or early Tuesday morning.

During the progress of the trial, it was sought to be shown in behalf of the appellant that the deceased was accustomed to carry a pistol; that he indulged in riotous conduct; and that he, with others, had been indicted in July, 1923, for creating a disturbance on the public highway by shooting off firearms.

It was sought to show also that at the November, 1923, term of Court, the deceased was indicted for the crime of burglary, in that he entered the dwelling house of the appellant with intent therein to commit a criminal assault upon the wife of the appellant, and that he was convicted and recommended to mercy, and that he was sentenced to serve a term of five years. The record is quite lengthy in setting forth what took place between the appellant's counsel, the Solicitor, and the Court. The Court ruled out the evidence in reference to the indictments of July 16, 1923.

On attempting to get in the record in reference to the indictment for burglary, when the record was at first produced, it was contended on the part of the State that there had been an order made by Judge Smith, who presided at that trial, granting a new trial to the deceased. This order could not be found. The Clerk of Court testified that he knew that such an order had been made. At the conclu-

sion of this testimony, the trial Judge permitted the record
to be introduced in evidence, and this occurred (after the
ruling of the Court permitting the record to be introduced).

"Mr. Graydon: I will read the record of this indictment
to the jury. (Record of the indictment charging Preston
Branch with burglary with intent to commit rape read to
the jury.) (Same was introduced in evidence, and returned
to the Clerk of Court.)"

Afterwards the order granting a new trial was found, and
the Solicitor offered to let it be put in evidence without re-
calling the Clerk of Court to prove it—whereupon the Court
intervened, saying:

"Then, if that is true, I will rule the whole thing out, and
I am going to tell that jury right now to disregard that
record. Rule it out—the record against this man Preston
Branch for burglary."

The attorney for the appellant, wishing to fully protect
the rights of his client, with permission of the Court, sought
to have a number of the witnesses testify as to the facts re-
lating to this indictment. But the Judge ruled that, having
once made the point by seeking the introduction of the
record, further testimony was not necessary on that point.

The attitude of the Court in reference to this is shown
in part in the examination of Sam Peak, a brother of the
appellant, who appeared as a witness in his behalf:

"Q. Is this the same boy that had trouble with Lee
Peak's wife? A. Yes, sir.

"Q. Was he tried in this Court? A. Yes, sir.

"The Solicitor: I don't think that is relevant.

"The Court: I think it is, Mr. Solicitor. Of course, I
will charge the jury the law, but anything that shows the
state of mind that the defendant was in is competent within
a reasonable time.

"The Solicitor: Within a reasonable time and connected
with the homicide.

"Mr. Graydon: I just asked him if he was the same

Negro that had a row with the defendant's wife. I don't think it would make any difference if it was six years ago.

"The Court: Let it stay in."

It will be noted that, having permitted the record in the case for burglary to be introduced and read to the jury, the trial Judge reversed his ruling, and instructed the jury to disregard it. Evidence was introduced in behalf of the defense to the effect that the deceased was of a violent and turbulent character, and that his reputation for peace and order was bad.

The defendant has appealed upon a number of exceptions. The indictment charged that the deceased was shot by the appellant on December 7, 1924, and that he then and there died. During the progress of the trial, it appeared that death did not occur until Monday night or Tuesday morning, and the counsel for appellant moved for a directed verdict upon the variance between the allegations and the proof. The Court told the Solicitor that he would permit him to amend the indictment by alleging the time of the death, which was done, and this is the ground of two of the exceptions.

The exceptions have been grouped in the argument of the appellant, and we will follow that grouping. Considering Exceptions 1, 2 and 9: These allege error in excluding testimony to the effect that the deceased and others had been arrested some time prior to the time of the homicide for taking part in a riot and shooting on the public highway.

"The rule is that evidence of other specific instances of violence on the part of the deceased are not admissible, unless they were directed against the defendant, or, if directed towards others, were so closely connected in point of time or occasion with the homicide as reasonably to indicate the state of the mind of the deceased at the time of the homicide, or to produce reasonable apprehension of great bodily harm. A similar question in reference to the conduct of the defendant has recently been considered by this Court in the

case of *State v. Gregory* [127 S. C., 87]; 120 S. E., 499, in which it is declared that the conduct, actions, and general demeanor of the accused immediately before the killing is admissible to show that he was in a vicious humor, as bearing upon the great issue in the case, his frame of mind at the time of the homicide. *State v. Miller,* 73 S. C., 280; 53 S. E., 426; 114 Am. St. Rep., 82. *State v. Rowell,* 75 S. C., 494; 56 S. E., 23; 4 Elliott, Ev., § 3029. The same rule should apply on behalf of the accused in establishing the temper of the deceased at the time of the fatal encounter. *State v. Dean,* 72 S. C., 74; 51 S. E., 524. *State v. Andrews,* 73 S. C., 257; 53 S. E., 423. *State v. Springfield,* 86 S. C., 323; 68 S. E., 563." *State v. Hill,* 129 S. C., 168; 123 S. E., 817.

It is difficult to fix any time within which such testimony shall be admitted or excluded. This has to be left largely to the discretion of the trial Judge, and his discretion will not be disturbed, unless it is manifest that there has been an abuse of his discretion to the prejudice of the accused, and this Court is of the opinion that no such abuse of discretion has been here shown, and these exceptions are overruled.

Exceptions 3 and 4 relate to permitting the amendment to the indictment. The indictment was free from fault in the first instance, and did not need any amendment. Any date could have been alleged prior to the time of giving out the bill to the grand jury, and the true date could have been proven. Therefore, the amendment in no way changed the charge against the appellant. "It is not necessary to prove the precise day or even year laid in the indictment, except where time enters into the nature of the offense, or is made part of the description of it." *State v. Branham,* 13 S. C., 389. These exceptions are overruled.

Exceptions 7, 10, and 11 allege error in the charge of the jury, first, in charging the jury that "the defendant must have been without fault in bringing

.about the difficulty. I mean the immediate difficulty; that which results in death." An examination of the charge of his Honor in its entirety will show that these exceptions cannot be sustained. It was the immediate difficulty which brought about the death of the deceased. His Honor fully charged the jury as to the rights of the appellant, charging clearly and fully the law in reference to renewing a difficulty after one had withdrawn from it, and, in fact, delivered a clear and full charge, covering the whole case, without reversible error, and these exceptions are overruled.

Exceptions 5, 6, and 8 allege error in the refusal to allow the introduction of the record for burglary. As stated, this indictment was found at the November, 1923, term of Court, and the defendant was tried and convicted, and a new trial was granted. This was more than one year before the time of the commission of the homicide. Counsel for appellant contends in support of these exceptions that specific acts of violence against the defendant by the deceased are always admissible to show the state of mind of the deceased, as bearing on the question of self-defense, and quotes from the case of *State v. Stockman,* 82 S. C., 388; 64 S. E., 595; 129 Am. St. Rep., 888, as follows:

"Where there is some evidence tending to support a plea of self-defense in a trial for homicide, it is competent, for the purpose of showing that the deceased was the aggressor, to introduce evidence reasonably tending to show that deceased had hostile feelings towards defendant at the time of the encounter, such as former threats to injure, quarrels or difficulties, assaults and the like."

This principle is announced in *State v. Hill, supra,* and the only difficulty is in the application of the principle announced. The trial Judge understood the rule, and endeavored to apply it, for, he said in passing on the testimony of Lee Peak, "I will charge the jury the law by anything that shows the state of mind that the defendant was in is competent within a reasonable time."

By excluding the testimony, the trial Judge held, in effect, that this charge against the deceased was not sufficiently connected in time and circumstances to be submitted as evidence to the jury, and there was no abuse of discretion on his part in so holding, and these exceptions are overruled. Besides, the record was put in evidence and read to the jury. As to what effect this may have had on the minds of the jury although told to disregard it, we express no opinion. The jury certainly had every opportunity, from the nature of the questions asked and the ruling of his Honor, to have lodged in their minds every fact and circumstance connected with the conduct of the deceased towards the defendant and his wife.

From the testimony, the jury could view this case in two aspects, with reference to the appellant, as having, not long prior to the time of the homicide, engaged in a drunken bout with the deceased and one Tom Brown, or as having been set upon and beaten by the deceased and one Tom Brown. In any aspect of the case, the jury might have concluded, and from their verdict apparently did conclude, that as the result of what took place on the road not long before the homicide, the appellant went home, and under the pretext of hunting for a cow, got his gun and took a number of shells, and went hunting for the deceased, and killed him; and by their verdict they found that the appellant had not had time within which to cool, and, while smarting under what had recently taken place, took the life of the deceased.

The record discloses such a state of facts as warrants the conviction of the appellant, and there was not any reversible error on the part of his Honor in the conduct of the case, or in his charge.

Let the charge of his Honor be reported.

The judgment is affirmed.

MESSRS. JUSTICES WATTS, COTHRAN, BLEASE and STABLER concur.

MR. CHIEF JUSTICE GARY did not participate.