14645

STATE v. RIVERS

(196 S. E., 6)

September, 1936.

*Messrs. B. Allston Moore* and *Frank H. Bailey,* for appellant,

*Mr. Robert McC. Figg, Jr., Solicitor for the State,*

March 21, 1938.

*Per curiam.*

Appellant was put upon trial in the Court of General Sessions for Charleston County on an indictment charging him with the murder of one Purse A. Wansley, a police officer of the City of Charleston, was by a jury found guilty without recommendation to mercy, and the sentence by the Court to death by electrocution automatically followed.

There are ten exceptions to the judgment of the Circuit Court, and they will be considered separately, except when it is convenient to group them.

Exception 1 alleges error for that the trial Judge, in charging the jury with respect to the right of a police or peace officer to make an arrest without a warrant, read to the jury the following Section (907) from the Code: "Upon view of a felony committed, or upon certain information that a felony has been committed, or upon view of a larceny committed, any person may arrest the felon or thief, and take him to a Judge or magistrate, to be dealt with according to law"; the error being that the appellant had committed neither a felony nor a larceny, and that such charge tended to confuse the issues before the jury, had no place in the trial or charge, and was manifestly prejudicial to the appellant.

Immediately following the reading of the above section of the Code to the jury, the trial Judge made this statement:

"That section is not applicable to this case, because no felony had been committed, and no larceny was involved."

In charging a jury, the Circuit Judge should be cautious to charge only the law which is applicable to the case as made by the facts, for under some circumstances a mass of inapplicable law burdened upon the juror's mind may lead to great confusion. It is the constitutional duty of the Circuit Judge to declare the law, but this duty as heretofore stated only requires a statement of the law which is required by the facts adduced by the testimony. However, even though there was no testimony concerning the commission of a felony, we do not feel that this utterance on the part of the Circuit Judge in his charge constitutes reversible error. The jury could not have been misled by the reading of the above section of the Code when they were clearly and unequivocally instructed that the section read to them was not applicable to the facts of the case presented for their determination and conclusion, inasmuch as no felony or larceny had been disclosed by the testimony. This exception is overruled.

The issues raised by the second and third exceptions are so closely related that they may be discussed together. They raise the question whether or not the Circuit Judge erred in failing to charge the jury that the attempted arrest of appellant by the deceased was illegal and in submitting the issue of the legality of the attempted arrest to the jury.

In order to dispose of these issues, a brief statement of the facts is necessary:

On the evening of July 13, 1936, appellant and his friend, Isiah Brown, went to the room of appellant's cousin at Logan and Magazine streets. Among others who were gathered there the same evening were Limus Simmons and Francis Middleton. There was some card playing and whiskey drinking engaged in by some of the Negroes present, and all parties above mentioned had had at least one drink. During the evening an argument developed between, first, the appellant and one Henry Middleton, but the record does not

disclose any connection between Henry Middleton and the others, and Henry appears to have passed out of the picture almost as soon as entering thereupon; but immediately thereafter, in some way, Limus Simmons and appellant became involved in a dispute and retired from the room to Magazine street accompanied by Brown and Francis Middleton. There is testimony that appellant reluctantly went out on the street, but in going asked Brown for a knife with which to cut Simmons. Whereupon Middleton procured from some source either a toy shotgun or pipe and struck appellant on the back of the head with such weapon. During the mêlée Simmons got away and went to his home at 10½ Pitt street, and appellant and Brown chased Middleton, but he escaped. At the suggestion of Brown, he and appellant went to the room of Brown, which it appears is in the immediate locality, if not in the same house, in which appellant lived, and got Brown's pistol for the purpose of hunting Middleton and Simmons, with the avowed intent of putting Middleton, at least "on the peg," which expression translated means, shooting him in the leg. While appellant and Brown were procuring this pistol, appellant changed his shirt, the one which he had on being bloody from the lick which he had received when Middleton hit him, and the woman with whom he lived undertook to dissuade him from his avowed purpose, but was unsuccessful. Appellant and Brown then returned to the scene of the previous trouble on Magazine street, and when opposite a vacant lot appellant testified that Brown fired the gun twice, but not at any one. Middleton claimed that he was in this vacant lot at the time of the shooting and that the gun was fired at him, as a result of which he ran and went to his home at 10½ Pitt street, where he found Simmons, who had previously gone there. Within a short time thereafter appellant and Brown came to the door of 10½ Pitt street and asked for Simmons and Middleton, whereupon Simmons and Middleton went over the back fence and proceeded to the police station, where they made a report of the affair. They were referred to Detective Wansley (the deceased), and,

when he was informed that two boys had shot at Middleton on the corner of Magazine and Logan streets, he first tried to contact another officer to go with him, but, failing to do so, proceeded in an ordinary Chevrolet automobile with no insignia thereon and he himself being dressed in civilian clothes, to the section where the reported disturbance had occurred. Middleton and S i m m o n s accompanied Officer Wansley. As they were crossing Montagu street, appellant and Brown were seen on said Montagu street walking toward Pitt street. Upon sighting appellant and Brown, Detective Wansley drove his car to the curb, hurriedly alighted therefrom, seized appellant and Brown and ordered them to consider themselves under arrest. Appellant stated that it was a dark night and he could not discern whether Detective Wansley was a white man or a Negro, but there was testimony tending to show that the lights of the automobile were shining directly upon the deceased officer. A scuffle ensued between the three men and five shots were fired, two in quick succession, and after a short interval three rapid shots were fired. Officer Wansley was killed and his body bore evidence of three pistol wounds. The gun of the deceased officer was found on the pavement near his body with two fired cartridges in its chamber. Appellant's gun was never found but he admits that he fired his gun without any appreciable interval between the shots, but only after the deceased had fired at him twice, one of which shots wounded appellant.

Now, the question is, Was the arrest under the facts of this case unlawful as a matter of law or was its legality a question for the jury?

In the case of *State v. Sims,* 16 S. C., 486, Mr. Chief Justice Simpson, writing the opinion of the Court, said:

"Is it legal for peace officers to arrest for offenses less than felony, without warrant and when there is no disturbance in view? As a general rule it is not, but we find the

following in E,ast P. C., 306: 'Lord Hale and some later authorities have holden that such arrests may be made upon the charge of another, though the affray be over, for the purpose of bringing the party before a justice to find sureties, or for appearance. But where time and circumstances will admit of it, the better way is to apply for a warrant. It seems clear, however, that if one menaces another to kill him, upon complaint thereof to a constable forthwith, he may, in order to avoid present danger, arrest the party to detain him till he can conveniently bring him to a Justice of the Peace. 2 Hale P. C., 88. But this power is grounded on the duty of the officer to prevent a probable felony, and must be governed by the same rules which apply to that case; though Dalton extends it even to the prevention of a battery. Dalt., Ch. CXVI., § 3.' In 1 Russ. Cr. & M., Ch. X., § 2, p. 771, it is stated 'that in all cases of misdemeanor a peace officer may apprehend the party while committing the offense, and it should seem upon fresh and immediate pursuit in some instances.' See also, Rosc. Cr. Ev., 256.

"It seems in this case that Thomas had raised a row in Griffin's store, and had beaten two or three men. Griffin had put him out, but he came back and went out again, but was still present and drunk when pointed out to the police; he refused to be arrested and got into another man's wagon. Was not this upon fresh and immediate pursuit? This was certainly within the principle laid down by Lord Hale, cited above. See also case of *City Council v. Payne*, 2 Nott & McC., 475. We think the arrest, under the special circumstances of this case, as detailed in the evidence, was legal. Without such power on the part of policemen under such circumstances, municipal authorities for the preservation of peace and good order would be worthless, and our towns and cities would be frequently subjected to uncontrolled violence and disorder."

In the case of *Percival v. Bailey*, 70 S. C., 72, 49 S. E., 7, Mr. Justice Jones, speaking for the Court, said: "Peace officers have at common law the right to arrest upon view,

without warrant, all persons who are guilty of a breach of the peace or other violation of the criminal laws. [Citing various cases]. It may be that an offense committed in the full hearing of an officer would be deemed as committed in his view. *State v. Williams, supra* [36 S. C., 493, 15 S. E., 554]. There may be also special circumstances of emergency which would justify a peace officer in arresting without warrant for a breach of the peace not committed in his view, if the officer arrived at the place of the disturbance very soon after the offense, and found the offender present. *State v. Sims, supra; State v. Lewis* [50 Ohio St., 179], 33 N. E., 405, 19 L. R. A., 451. The foregoing is the rule and its modifications, so far as announced in this State, with reference to arrest without warrant for offenses less than felony."

The deceased, upon report made to him that appellant and Brown had had an affray with Middleton and Simmons, as a result of which Middleton and Simmons were still being pursued by appellant and Brown, went forthwith to the section of the reported affray. When he arrived, he found appellant and Brown walking toward the home of Middleton and Simmons, and at that time they were only a short distance away from the home of the men for whom they were searching with the admitted intent and purpose to shoot them.

Under the cases of *State v. Sims* and *Percival v. Bailey. supra,* and the evidence in this case, the trial Judge could have well held, as a matter of law, that the arrest was lawful. However, he s u b m i t t e d it to the jury to determine whether or not under the facts of the case the deceased was attempting to apprehend appellant upon fresh and immediate pursuit, and whether there were special circumstances of emergency to justify the deceased in attempting to make the arrest. If so, then, of course, the arrest was lawful.

The exceptions charging error in this respect are overruled.

The fourth exception charges that the Circuit Judge erred in failing to charge the jury that the appellant had the right to act in defense of his life in the situation that confronted him.

The Circuit Judge charged the jury fully and correctly on the law of unlawful arrest and also on the law of self-defense. The pertinent portions of his charge on these two phases of the law were as follows:

"And, further, that the right of a person to resist an unlawful arrest, even to the extent of taking the life of the aggressor, if it is necessary in order to regain his liberty, is the law of our State, and if you find that the Defendant was being unlawfully arrested and he used force apparently necessary to regain his liberty, even to the extent of taking the life of the aggressor, then you must find him not guilty.

"Further, I charge you that one unlawfully attempted to be arrested is not bound to retreat or seek or embrace a way to escape, but may stand his ground and use such force as may be apparently necessary to repel an unlawful arrest or detention or interference with his person.

"I also charge you that if the Defendant was where he had a right to be, when the deceased advanced upon him in a threatening manner, and with a deadly weapon; and if the Defendant did not provoke the assault and had at the time reasonable grounds to believe, and in good faith believed, that the deceased intended to take his life or do him great bodily harm, he was not obliged to retreat, nor to consider whether he would safely retreat, but was entitled to stand his ground and meet any attack made upon him with a deadly weapon, in such way and with such force, under all the circumstances, he, at the moment, honestly believed, and had reasonable grounds to believe, was necessary to save his own life or to protect himself from great bodily injury."

"The plea of self-defense is one which is rested upon the law of necessity. One seeking to justify himself for taking the life of another under this plea has to show, not that it was absolutely necessary that he do as he did, but that it was

apparently necessary. There are four different elements going to make up the plea of self-defense. The first is that the person seeking to avail himself thereof must show that he was without fault in bringing on the difficulty. Second, that at the time he fired the fatal shot he believed himself in danger of death or of sustaining serious bodily harm. Third, that a person of reasonable prudence and courage would have acted as he did under the circumstances. Fourth, that there was no apparently safe means of escape. All four of those are necessary for one seeking to avail himself of the plea of self-defense. If either one is missing, it cannot be said to be proven that this killing of which he is charged was justified.

"If one is acting in self-defense—and as I have stated, he is resting his defense upon the law of necessity—he does not have to show that it was really in fact necessary, but that it was apparently necessary."

The Circuit Judge, having submitted to the jury for their determination the legality of the arrest under the facts and circumstances hereinbefore related, out of an abundance of precaution charged the jury fully on the law of self-defense. It was submitted to the jury to decide whether this was an unlawful arrest. If they reached the conclusion that it was an unlawful arrest, they were fully and properly instructed on the right of appellant to resist the arrest. If they came to the conclusion that the arrest was lawful, but too much force was used by the deceased in attempting to effect same, appellant would be entitled to an instruction on the law of self-defense. This phase of the law was fully and clearly charged by the Circuit Judge.

The fourth exception is overruled.

Exceptions 5, 6, 7, 8 and 9 charge that the verdict was not responsive to the evidence and was based upon prejudice and bias.

So much of said exceptions as relate to the arrest being illegal have hereinbefore been passed upon.

Whether or not appellant knew or should have known that the deceased was an officer was a question peculiarly to be passed upon by the jury under the facts of this case. And, again, it was a question for the jury to answer if appellant exercised the slightest effort to ascertain if the deceased was an officer, or if he was being attacked.

Under our system of jurisprudence, a jury is the fact-finding organ of the Court, with only supervisory powers on the part of the trial Judge and, unless there is an abuse of discretion on his part in refusing a new trial when the motion is based upon a finding of the jury being not responsive to the testimony, but on prejudice and bias, this Court will not disturb his ruling.

The trial Judge, in refusing the motion for a new trial, stated: " * * * there is no reasonable doubt whatsoever in the mind of the Court that the verdict of the jury is amply, fully and clearly justified by the evidence in the case."

We cannot say that he is wrong in this conclusion.

The tenth exception challenges the admissibility of testimony concerning the report made by Francis Middleton to the deceased officer and related on trial of the case by Limus Simmons, who was present and heard the report made by Middleton to the deceased.

The testimony objected to by appellant was as follows:

"Q. What did String report to Mr. Wansley? A. Told him two boys on the corner of Logan and Magazine shot at him.

"Q. You were right there? A. Yes, sir."

Appellant contends that this testimony was clearly incompetent and hearsay, and for this reason should not have been admitted as evidence in this case. But it does not necessarily follow if the words in question are those of a third person, which are not spoken under the solemn obligation of an oath, that they are to be considered as hearsay. If this evidence had been offered for the purpose of showing the truth of the statement that Middleton had been fired upon by ap-

pellant or his confederate, then it would have been objectionable, and should have been excluded as hearsay testimony, but, as we view the words in the case at bar, the issue was not as to the truth of the words spoken by Middleton, but whether such words were actually uttered to the deceased officer, and were admitted in evidence for the purpose of disclosing that the deceased officer was acting in line of his duty on information imparted to him by another. See Greenleaf on Evidence, 16th Ed., p. 185, § 100. And again, as stated in *State v. Rash,* 182 S. C., 42, 48, 188 S. E., 435: "It is, of course, difficult to always determine what testimony should be admitted or excluded, and therefore the admission or exclusion of testimony has to be left largely to the discretion of the trial Judge, and his discretion will not be disturbed unless it is manifest that there has been an abuse of his discretion to the prejudice of the accused. See case of *State v. Peak,* 134 S. C., 329, 339, 340, 133 S. E., 31, and cases therein cited."

We have carefully reviewed the record in this case, and it is the opinion of the Court that all exceptions should be overruled; and the judgment appealed from is affirmed.

We join with the trial Judge in commending the counsel appointed to defend appellant for their able and conscientious services rendered as officers of the Court, and also express our appreciation to them for the zealous manner in which they have performed their duty.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES. BONHAM, BAKER and FISHBURNE concur.

MR. JUSTICE CARTER did not participate on account of illness.