573 S.E.2d 802

The STATE, Respondent,

v.

Gregory R. BLURTON, Petitioner.

No. 25564.

Supreme Court of South Carolina.

Heard Sept. 18, 2002.
Decided Dec. 2, 2002.

Tara Dawn Shurling, of Columbia, for Petitioner.

Attorney General Charles M. Condon; Chief Deputy Attorney General John W. McIntosh; Assistant Deputy Attorney General Charles H. Richardson; Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and, Walter M. Bailey, Jr., of Summerville, for Respondent.

Justice PLEICONES:

Petitioner was convicted of two counts of armed robbery, and one count each of kidnapping, grand larceny of a motor

vehicle, and failure to stop for a blue light. The trial judge sentenced Petitioner to three life sentences for the kidnapping and armed robbery convictions, ten years for grand larceny, and three years for failing to stop for a blue light, with all sentences to run concurrently.

On appeal, Petitioner contested certain evidentiary rulings as well as a jury charge. The Court of Appeals reversed and remanded for a new trial because of evidentiary errors, but held the jury charge that "orders of another" is no defense to a crime was proper in this case. *State v. Blurton,* 342 S.C. 500, 537 S.E.2d 291 (Ct.App.2000). We denied the state's petition for certiorari to review the Court of Appeals' reversal of evidentiary rulings. We granted Petitioner's petition for writ of certiorari to review the propriety of the jury charge. We reverse because we find the charge was not warranted by the facts adduced at trial.

## FACTS

Petitioner worked at a Wal–Mart in Orangeburg as a construction worker during the expansion of the building. Petitioner's wife managed the toy section of the same Wal–Mart, and her daytime manager was James Mayfield.

There was evidence that James Mayfield convinced Petitioner that Mayfield was a former Navy SEAL, and was currently working for the Central Intelligence Agency ("CIA"). Mayfield told Petitioner that the CIA was interested in recruiting Petitioner as an agent. Petitioner maintained at trial that he believed he was involved in a complicated CIA operation called "Double White" which required Petitioner to stage a robbery in order to establish his outlaw status so that he could more easily infiltrate a drug cartel. Petitioner testified that Mayfield told Petitioner that the sheriff's department in Orangeburg was involved with the drug cartel, and the staged robbery must look real so that the sheriff's department would report the robbery back to the cartel.

Petitioner testified that the plan was to seek out Roger, another employee of the Wal–Mart, who knew of the plan, and that Roger would lead Petitioner to the "cash room." Petitioner maintained at trial that Mayfield told Petitioner not to wear a mask or gloves, and to make sure the cameras in the store caught the robbery on tape so the drug cartel would

know that Petitioner robbed the store. Petitioner testified that he believed the money taken from Wal–Mart would be recovered and returned immediately to the store. He testified, "it wasn't a robbery. I never believed it was a robbery. If I would have believed it was a robbery I wouldn't have went in there ... it was just to appear to be a robbery, but they weren't going to let me keep the money." Petitioner testified that Mayfield told Petitioner to go to a motel in town after the staged robbery, and Mayfield would meet Petitioner there, recover the money, and the CIA would return the money to Wal–Mart.

Petitioner admits that he went into the Orangeburg Wal–Mart, where both he and his wife worked, armed with a handgun. Roger, his contact, was not working that day, so Petitioner met Brandon, another manager, whom Mayfield said also knew about the plan. Petitioner testified he pointed the gun at Brandon and ordered him into the cash room, making sure the cameras could see the gun. Once Petitioner entered the cash room, he was supposed to take all of the money in the room, which was over one hundred thousand dollars. However, Petitioner testified that once he entered the room, he realized his wife's best friend, Brenda, was counting the money. At this point, Petitioner "deviated" from the plan. Petitioner testified that instead of taking all of the money, which he easily could have, he took only the one dollar bills which were stacked on a table in the cash room, totaling eight thousand five hundred dollars and five cents. This is the basis of the first armed robbery count.

Petitioner further admits that he forced Brandon to walk outside the store and into the parking lot after the money was taken. However, Petitioner testified that "Brandon was supposed to come with me, to walk outside the store. This was part of the plan ... because they have a girl that stands there. When you walk out of Wal–Mart she checks your bags. I had a big bag of money. If I'm not walking with the manager out the door, she's going to check the bag, and it's going to create confusion ..." This act is the basis of the kidnapping charge.

Once out of the store, Petitioner testified he believed someone from the CIA was going to pick him up, because he did not have a car. A white Mercedes pulled up and parked right next to Petitioner, and Petitioner testified "[he] thought [his]

ride was here." A woman got out of the car, began screaming, and threw her purse and keys at Petitioner. This is the basis of the second armed robbery charge. Petitioner testified, "I figured it was for show. . . ."

Petitioner took the car, and proceeded to evade the police. Petitioner testified that Mayfield told him a CIA agent would intercept the local police so that Petitioner would not get caught. This is the basis for the grand larceny of a motor vehicle charge, and the failure to stop for a blue light charge.

Petitioner admitted to all of these facts, but maintained that he thought he was working for the CIA, and therefore did not have the requisite *mens rea* to commit any crime.

## ISSUE

Did the Court of Appeals err in holding the trial court properly instructed the jury that it is no defense to a crime if it was done under the instructions of another?

## DISCUSSION

■ The trial judge instructed the jury on the requisite *mens rea*, and then added, "if one committed a criminal act it is no defense to show that it was done under the instructions or orders from another. Likewise, it is no defense to a criminal act if it be shown that it was done in partnership or cooperation with another person."

■ Petitioner argued at trial that he lacked the *mens rea* necessary to complete the crime. "Criminal liability is normally based upon the concurrence of two factors, 'an evil meaning mind [and] an evil doing hand.'" *State v. Jefferies,* 316 S.C. 13, 18, 446 S.E.2d 427, 430 (1994) (internal citations omitted). Petitioner did not argue that Mayfield instructed him to commit a crime, but rather that because Petitioner thought the entire event was a staged CIA operation, it was not a criminal act as he lacked the 'evil meaning mind'. Because the jury instruction given was not implicated by the facts in this case, we hold it was error to charge the jury the "orders of another" instruction.

■ The evidence presented at trial determines the charged jury instruction. *State v. Lee,* 298 S.C. 362, 380 S.E.2d 834 (1989). The purpose of a jury instruction is "to enlighten the jury and to aid it in arriving at a correct verdict.

It is error to give instructions which are calculated to confuse or mislead the jury." *State v. Leonard,* 292 S.C. 133, 137, 355 S.E.2d 270, 273 (1987). If a jury instruction is provided to the jury that does not fit the facts of the case, it may confuse the jury. *State v. Lee, Id.; State v. Hewitt,* 205 S.C. 207, 31 S.E.2d 257 (1944). Only law applicable to the case should be charged to the jury. Instructions that do not fit the facts of the case may serve only to confuse the jury. *State v. Lee, Id.; State v. Fair,* 209 S.C. 439, 40 S.E.2d 634 (1946); *State v. Rivers,* 186 S.C. 221, 196 S.E. 6 (1938). We hold based upon the evidence introduced in this case, that the Court of Appeals erred in affirming the "orders of another" instruction.[1]

## CONCLUSION

We reverse the decision of the Court of Appeals holding that the "orders of another" charge was proper under the evidence adduced. On retrial we are confident that the trial court will appropriately instruct the jury based upon the evidence presented.

**REVERSED.**

TOAL, C.J., MOORE, WALLER and BURNETT, JJ., concur.

---

1. The "orders of another" jury charge, is a correct proposition of law. *See, e.g. Brown v. Bailey,* 215 S.C. 175, 54 S.E.2d 769 (1949).