THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Vasquez Q. Hendon, Appellant.
 
 
 

Appeal From Marion County
 Doyet A. Early, III, Circuit Court Judge

Unpublished Opinion No. 2007-UP-080
Submitted January 1, 2007  Filed February 14, 2007

AFFIRMED

 
 
 
 Appellate Defender Aileen P. Clare, of Appellate Defense, of Columbia, for Appellant.
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Attorney General Deborah R.J. Shupe, all of Columbia; and Solicitor Edgar Lewis Clements, III, of Florence; for Respondent.
 
 
 

PER CURIAM:  Vasquez Hendon was convicted of two counts of assault with intent to kill and sentenced to concurrent terms of imprisonment totaling eight years.  He appeals, arguing the trial court erred in charging the jury on the law of accomplice liability.  We affirm.[1]
FACTS
Around 1:00 a.m. on January 13, 2004, Lieutenant Charlie Watson encountered Hendon and Demetrius Jones walking down Seaboard Avenue in Mullins, South Carolina.  Lieutenant Watson spoke to the two men, and he noticed that Hendon was wearing a brown or tan light-colored jacket with a white toboggan/ski mask flipped up on his head like a hat.  A few hours later, two men entered the Huddle House restaurant in Mullins, a few blocks from Seaboard Avenue.  According to waitress Cynthia Benjamin, the two men ordered food and attempted to bring beer into the restaurant.  Benjamin noticed that the man with the lighter skin tone was wearing a white toboggan-type hat rolled up on his head and a brown jacket.  After eating their food, the two men left.
Between 5:00 a.m. and 5:30 a.m. on January 13, 2004, a man entered the Huddle House brandishing a gun, wearing a white ski mask pulled over his face, and wearing a brown jacket.  An accomplice stood in the foyer of the restaurant, apparently unarmed.  The masked gunman shot at Benjamin, who fled through the back of the restaurant.  While the gunman was focused on Benjamin, customer Doug Hooks attempted to escape through the front door.  Hooks knocked over and became entangled with the accomplice before running into the parking lot.  The gunman chased Hooks and starting shooting at him in the parking lot before the gunman and the accomplice decided to leave.  No one was shot in the incident, and it was captured on the Huddle Houses video monitoring system.  According to Benjamin, the gunman was wearing the same clothes and white tobbaggan/ski mask and had the same build and skin tone as the man who had eaten with his friend at the Huddle House less than two hours earlier that morning.    
Police later questioned Hendon and Demetrius Jones.  Both admitted to being at the scene; however, both accused the other of being the shooter.  In Jones oral and written statements accusing Hendon of being the gunman, Jones informed police that Hendon suggested they return to the Huddle House, and Hendon had a gun and a mask over his face as they approached.  Jones orally informed police that he was knocked over by Hooks exiting the Huddle House before Jones could enter.     
Hendon was indicted for attempted armed robbery, two counts of assault with intent to kill, and possession of a weapon during the commission of a violent crime.  Jones was not charged with any crime.  Although Jones was a witness for the State at trial, he changed his testimony, saying he did not recall any of the events of that night or giving a  statement to police.  Benjamin identified Hendon as the shooter at trial.  After all of the evidence, and over the objections of defense counsel, the trial court charged the jury with, among other things, the law of accomplice liability that the hand of one is the hand of all.  Hendons counsel renewed his objection to the accomplice liability charge after all the charges were given.   
The jury acquitted Hendon of attempted armed robbery but convicted him of two counts of assault with intent to kill and possession of a weapon during the commission of a violent crime.  In light of the acquittal on the armed robbery charge, the circuit court directed a verdict of not guilty on the charge of possession of a weapon during the commission of a violent crime.  Hendon was sentenced to two concurrent terms of eight years on each of the convictions for assault with intent to kill.  This appeal followed. 
LAW/ANALYSIS
Hendon argues the trial court erred in charging the jury on the law of accomplice liability because only one person was alleged to have been the shooter and there was no evidence that the non-shooter participated in the crimes.[2]  We disagree.
A trial court is required to instruct the jury on the current and correct law of the state.  State v. Adkins, 353 S.C. 312, 317, 577 S.E.2d 460, 463 (Ct. App. 2003).  The evidence presented at trial determines the charged jury instruction.  State v. Blurton, 352 S.C. 203, 207, 573 S.E.2d 802, 804 (2002).  If any evidence exists to support a charge, then it should be given.  State v. Burris, 334 S.C. 256, 262, 513 S.E.2d 104, 108 (1999).  Thus, in reviewing jury instructions for error, we must consider the courts jury charge as a whole in light of the evidence and issues presented at trial.  Adkins, 353 S.C. at 318, 577 S.E.2d at 463.  If the charge, as a whole, is reasonably free from error, any isolated portions which may be misleading do not constitute reversible error.  State v. Buckner, 341 S.C. 241, 246-47, 534 S.E.2d 15, 18 (Ct. App. 2000).  Where a jury instruction does not fit the facts of the case, however, it may confuse the jury and may constitute error.  Blurton, 352 S.C. at 207-08, 573 S.E.2d at 804 (The purpose of a jury instruction is to enlighten the jury and to aid it in arriving at a correct verdict.  It is error to give instructions which are calculated to confuse or mislead the jury.  If a jury instruction is provided to the jury that does not fit the facts of the case, it may confuse the jury.)(quoting State v. Leonard, 292 S.C. 133, 137, 355 S.E.2d 270, 273 (1987)).  
Under the theory of accomplice liability, or the hand of one is the hand of all, one may be criminally liable for the criminal acts of a confederate.  To be liable under this theory, a person must personally commit the crime or be present at the scene of the crime and intentionally, or through a common design, aid, abet, or assist in the commission of that crime through some overt act.  State v. Austin, 299 S.C. 456, 459, 385 S.E.2d 830, 832 (1989).  There need not be a formally expressed agreement to establish the conspiracy; the conspiracy may be shown by the conduct of the parties and circumstantial evidence.  State v. Condrey, 349 S.C. 184, 194, 562 S.E.2d 320, 325 (Ct. App. 2002).  
In determining whether the accomplice liability charge was warranted in this case, our focus must be on whether there was any evidence that Hendon and Jones were acting together at the time of the shooting.  Jones informed police that after the two men decided to return to the Huddle House, Hendon approached the restaurant with his gun and wearing a mask over his face.  Hooks testified that the non-shooter was standing in the foyer of the Huddle House during the shooting.  Both Hendon and Jones admitted to being present at the crime scene.  Thus, the two were together before, during and after the shooting.  It can be inferred, from the conduct of the two men and the circumstances, that both men knew of the plan to rob the Huddle House and that the non-gunman, who was waiting in the foyer, would act as a lookout.  Although it is troubling that the accomplice liability charge was given when Jones was not charged in this crime, this fact does not control our analysis of whether there was evidence to support the accomplice liability charge.  Because there was circumstantial evidence to support the charge, we find no error with the trial courts decision to give the charge.  
Further, even assuming it was error to give the accomplice liability charge, we find such error would be harmless.  Both Lieutenant Watson and Benjamin identified Hendon as wearing the same clothing and hat as the gunman on the morning of the shooting.  Benjamin also pointed to Hendon and positively identified him as the shooter at trial based on his clothing, skin tone, and build.  Despite the fact that he recanted at trial, Jones gave statements to police that Hendon was the shooter.  Because there was competent evidence that would support the guilty verdict against Hendon, we find an alleged error in instructing the jury on the law of accomplice liability is harmless.  State v. Bailey, 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1999) (holding that an insubstantial error not affecting the result of the trial is harmless where guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached).  
CONCLUSION
There was circumstantial evidence to support the trial courts decision to give the accomplice liability charge.  Further, even assuming the trial court erred in giving the charge, that error was harmless in light of the evidence presented at trial.  Thus, Hendons convictions and sentences are
AFFIRMED. 
ANDERSON, HUFF, and BEATTY, JJ., concur.

[1]  Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  Hendon does not complain about the substance of the charge given.  Therefore, we will confine our analysis to whether there was evidence presented at trial that would support an accomplice liability charge.