538 S.E.2d 248

**The STATE of South Carolina, Respondent,**

v.

**Bayan ALEKSEY, Appellant.**

**No. 25212.**

Supreme Court of South Carolina.

Heard Sept. 19, 2000.

Decided Nov. 13, 2000.

Rehearing Denied Dec. 6, 2000.

---

Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, all of Columbia; and Solicitor Walter M. Bailey, of Summerville, for respondent.

BURNETT, Justice:

Appellant was convicted and sentenced to death for the murder of a state trooper. We affirm.

## FACTS

On New Year's Eve 1997, Sergeant Franklin Lingard of the South Carolina Highway Patrol stopped a white Ford Mustang with a Delaware license plate for speeding on Interstate 95. Sergeant Lingard approached the driver's side of the Mustang and was shot to death by a gun fired from inside the car on the driver's side. Officer Lin Shirer, a narcotics officer with the Calhoun County Sheriff's Office, accompanied Sergeant Lingard on patrol that night. Officer Shirer witnessed the shooting, but was unable to see inside the car to identify the shooter because of its dark tinted windows.

A multi-car chase ensued. An officer stopped the Mustang long enough for Gloryvee Perez Blackwell (Blackwell) and her two children to exit from the passenger side of the vehicle. While Blackwell and the children were exiting the car, appellant held a gun to his head and threatened to kill himself if the officers came any closer to him. Appellant sped away and was eventually stopped again when an officer deliberately collided his vehicle with the Mustang.

Appellant was pulled unconscious from the car, treated at the scene by EMS, then taken to the hospital, and from there to the Orangeburg/Calhoun Regional Detention Center on New Year's Day. A background check on appellant revealed an extensive record of arrests for fraud-related activities, outstanding warrants, and numerous aliases. In addition, both the Mustang and its license tag were stolen.

On January 2nd, appellant gave two statements to officers from the State Law Enforcement Division (SLED). In the first, he claimed Blackwell was driving and shot Sergeant Lingard, after which they stopped and changed seats. In the second, appellant confessed to the shooting.

## ISSUES

I. Did the trial court's instruction that the jury had "one single objective and that is to seek the truth" violate appellant's due process rights by shifting the burden of proof to appellant and diluting the reasonable doubt standard of proof?

II. Did the trial court err by refusing to suppress appellant's confession and by impermissibly delegating a portion of his *Miranda* duties to the jury?

III. Did the trial court err in refusing to allow appellant to cross-examine Blackwell concerning dismissed indictments on narcotics charges?

IV. Did the trial court err by refusing to redact from appellant's statement references to a contract on his life?

## DISCUSSION

I. Did the trial court's instruction that the jury had "one single objective and that is to seek the truth" violate appellant's due process rights by shifting the burden of proof to appellant and diluting the reasonable doubt standard of proof?

■ Appellant argues the trial court erred in instructing the jury its "one single objective" was "to seek the truth." Appellant contends this instruction violated his due process rights by shifting the burden of proof and diluting the reasonable doubt standard. In the context in which the instruction was given, we disagree.

The trial court gave a lengthy, complete, and proper instruction on reasonable doubt, the presumption of innocence, and the State's burden of proof. Next, the judge instructed the jury concerning its role as finder of facts. In concluding his remarks on determining the credibility of witnesses, the judge stated:

Obviously you do not determine the truth or falsity of a matter by counting up the number of witnesses who may have testified on one side or the other.

Ladies and gentlemen, throughout this entire process, you have but one single objective, and that is to seek the truth, to seek the truth regardless of from what source that truth may be derived.

Now, all of these things, ladies and gentlemen, you will consider, bearing in mind that you must give the defendant the benefit of every reasonable doubt.

■ Jury instructions on reasonable doubt which charge the jury to "seek the truth" are disfavored because they "[run]

the risk of unconstitutionally shifting the burden of proof to a defendant." *State v. Needs,* 333 S.C. 134, 155, 508 S.E.2d 857, 867–68 (1998). However, jury instructions should be considered as a whole, and if as a whole they are free from error, any isolated portions which may be misleading do not constitute reversible error. *State v. Smith,* 315 S.C. 547, 446 S.E.2d 411 (1994). The standard for review of an ambiguous jury instruction is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution.[1] *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).

While we have urged trial courts to avoid using any "seek" language when charging jurors on either reasonable doubt or circumstantial evidence (*see State v. Needs,* 333 S.C. 134, 155, 508 S.E.2d 857, 867–68 (1998)), the "seek" language here did not appear in either the reasonable doubt or circumstantial evidence charges, but in the instructions on juror credibility. Both the reasonable doubt and circumstantial evidence charges were complete and proper.

The Fifth Circuit Court of Appeals found no error in a nearly identical situation, where the trial court instructed the jury: "Remember, at all times, you are judges—judges of the facts. Your sole interest is to seek the truth from the evidence in this case." *United States v. Gonzalez–Balderas,* 11 F.3d 1218, 1223 (5th Cir.1994). Like appellant, Gonzalez–Balderas argued instructing the jury that its "sole interest is to seek the truth" dilutes the reasonable doubt standard of proof. The court held:

---

1. In *State v. Manning,* 305 S.C. 413, 416, 409 S.E.2d 372, 374 (1991), we cited *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) for the rule that an instruction is defective if a reasonable juror *could* interpret it to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause. This standard has since been repudiated by the United States Supreme Court. *See Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (clarifying that proper and only standard is whether there is a reasonable likelihood the jury applied the challenged instruction in a way that violated the constitution). To the extent that it follows the *Cage* "could" standard instead of the *Estelle* "reasonable likelihood" standard, the Court of Appeals' subsequent opinion in *State v. Clute,* 324 S.C. 584, 594, 480 S.E.2d 85, 90 (Ct.App.1996), is overruled.

As an abstract concept, "seeking the truth" suggests determining whose version of events is more likely true, the government's or the defendant's, and thereby intimates a preponderance of evidence standard. Such an instruction would be error if used in the explanation of the concept of proof beyond a reasonable doubt. The district court, however, did not use it in this way. Rather, the trial court began its instructions with a clear definition of the government's burden of proof in which it repeatedly stated that the defendant could not be convicted unless the jury found that the government had proven him guilty beyond a reasonable doubt. It correctly defined proof beyond a reasonable doubt as "proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs." There is no reasonable likelihood that the jury inferred that the single reference at the end of the charge to "seeking the truth," rendered as it was in the context of an admonition to "not give up your honest beliefs," modified the reasonable doubt burden of proof.

*Id.* We find the reasoning of the *Gonzalez–Balderas* court very persuasive.[2] There is not a reasonable likelihood the

---

**2.** *See also Watkins v. Ponte*, 987 F.2d 27, 32 (1st Cir.1993) (instruction defining reasonable doubt as "doubt that resides in the mind of a reasonable man who is earnestly seeking truth" did not shift burden to defendant, even though it was poor formulation); *United States v. Gray*, 958 F.2d 9, 13 (1st Cir.1992) (jury's sole interest to find truth from the evidence did not shift burden of proof); *United States v. Winn*, 948 F.2d 145, 159–60 (5th Cir.1991) (sole interest of jury to seek the truth from the evidence not plain error); *Andrews v. State*, 236 Ga.App. 152, 511 S.E.2d 258, 259 (1999) ("it is a doubt of a fair-minded, impartial juror honestly seeking the truth" does not shift burden); *Commonwealth v. Allard*, 429 Mass. 756, 711 N.E.2d 156, 159–60 (1999) (trial court's characterization of jury's function as "search for the truth" did not result in prejudicial error); *State v. Weisbrode*, 653 A.2d 411, 417 (Me.1995) ("your sole interest is to seek the truth from the evidence" did not shift burden); *State v. Hudson*, 286 N.J.Super. 149, 668 A.2d 457, 459 (App.Div.1995) ("search for the truth" did not dilute reasonable doubt standard); *People v. Walos*, 229 A.D.2d 953, 645 N.Y.S.2d 695, 696 (N.Y.App.Div.1996) (reference to trial as "search for truth" did not dilute reasonable doubt standard); *People v. Reed*, 212 A.D.2d 962, 624 N.Y.S.2d 693 (N.Y.App.Div.1995) (charge as a whole conveyed reasonable doubt standard; "search for truth" was given in context of credibility instruction, not reasonable doubt); *People v. Hill*, 209 A.D.2d 224, 618 N.Y.S.2d 641, 642 (N.Y.App.Div.1994) (reference to determi-

jury applied the challenged instruction in a manner inconsistent with the burden of proof beyond a reasonable doubt. The trial court's instructions concerning seeking the truth were given in the context of the jury's role in determining the credibility of witnesses.[3] The remarks were prefaced by a full instruction on reasonable doubt and followed by an additional exhortation to bear in mind the State's heavy burden of proof. Under the standards articulated in *Smith* and *Boyde*, the instruction as a whole properly conveyed the law to the jury and there is not a reasonable likelihood the jury applied the judge's instructions to convict appellant on less than proof beyond a reasonable doubt.

II. Did the trial court err by refusing to suppress appellant's confession and by impermissibly delegating a portion of his *Miranda* duties to the jury?

The day after his arrest for the trooper's murder, appellant asked to speak with a SLED agent. He was taken to the Orangeburg County Law Enforcement Center where he met with Agents George Darnell and Kenny Mears. They in-

---

nation of "the truth" in connection with credibility and factual issues did not alter reasonable doubt standard); *State v. Streich*, 163 Vt. 331, 658 A.2d 38, 53 (1995) (jury's role to "seek the truth," viewed with instructions as a whole correctly conveyed burden of proof); *State v. Benoit*, 158 Vt. 359, 609 A.2d 230, 232 (1992) (jury's role to "seek the truth" not improper instruction on burden of proof in light of other instructions conveying reasonable doubt standard); *State v. Avila*, 192 Wis.2d 870, 532 N.W.2d 423, 429–30 (1995) ("you should search for truth" did not dilute burden of proof).

Even the cases relied upon by appellant support the state's position. *See United States v. Pine*, 609 F.2d 106 (3d Cir.1979) (conviction affirmed; trial court's full and forceful charge on reasonable doubt assured jury properly applied burden of proof); *State v. Medina*, 147 N.J. 43, 685 A.2d 1242 (1996) (conviction affirmed; "on balance, the instruction passes muster").

Although settled law disfavors instructing jurors to seek the truth in some contexts because it might be misleading as to the burden of proof, we decline to hold any mention of "the truth" in jury charges is unconstitutional.

3. This was clearly the judge's understanding, as evidenced by a later colloquy with defense counsel. After closing arguments, appellant asked the judge to re-charge the jury on reasonable doubt "in the same way you did the first time, leaving [the "seek the truth" language] out." The judge replied, "No sir, I didn't do that. I didn't charge finding of the truth in the context of reasonable doubt. I used that language as to the credibility of the witnesses."

formed appellant of his *Miranda* rights and he signed a waiver. Appellant then gave a tape recorded statement in which he told the agents that Blackwell shot the trooper. When appellant concluded his narrative, Agent Darnell asked, "Is that all?," to which appellant responded, "That's all I got to say." The agents then turned off the tape recorder.

As the agents prepared to return appellant to the detention center, appellant said he wanted to talk further and asked if the agents could help his friend Elena Batkilina, who was in trouble in Florida. The agents told appellant Florida was outside their jurisdiction and there was nothing they could do to help her. Appellant then asked about the status of Blackwell and the children. Finally, he asked if he could be moved out of the infirmary into the general prison population. After several phone calls, the agents were able to obtain permission for appellant to move into the general prison population. Appellant then gave the statement at issue, inculpating himself in the trooper's death.

Appellant's second issue on appeal raises several questions:

(a) Did appellant unambiguously invoke his right to remain silent when he said, "That's all I've got to say" at the end of his first statement?

(b) If so, was his request scrupulously honored?

(c) Did the trial court err in not specifically ruling on whether appellant invoked his right to remain silent?

 A statement obtained as a result of custodial interrogation is inadmissible unless the suspect was advised of and voluntarily waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). *Dickerson v. United States*, 530 U.S. 428, 433, 120 S.Ct. 2326, 2331, 147 L.Ed.2d 405 (2000). The voluntariness of a statement is determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Furthermore, the conclusion of the trial judge on issues of fact as to the voluntariness of a statement will not be disturbed on appeal unless so manifestly erroneous as to show an abuse of discretion. *State v. Kennedy*, 333 S.C. 426, 429, 510 S.E.2d 714, 715 (1998).

When a suspect invokes his right to remain silent, law enforcement officers must scrupulously honor it. *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). However, before law enforcement officers are required to discontinue questioning, the suspect must clearly articulate his desire to end the interrogation. *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); *State v. Reed*, 332 S.C. 35, 42, 503 S.E.2d 747, 750 (1998). Moreover, law enforcement officers may certainly speak with a suspect who reinitiates communication subsequent to an invocation of rights. *See Edwards v. Arizona*, 451 U.S. 477, 485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) (once an accused requests counsel, police interrogation must cease unless the accused himself "initiates further communication, exchanges, or conversations with the police").

We conclude appellant's statement "That's all I've got to say," was not an unequivocal invocation of his right to discontinue questioning. In context, the statement was ambiguous, indicating either a desire to discontinue questioning or simply the end of his story.[4] *See State v. McCorkendale*, 267 Kan. 263, 979 P.2d 1239, 1247–48 (1999) ("That's all I got to say" not an unequivocal invocation of right to remain silent; it could just as easily have been interpreted as a statement that he had finished his explanation of the matter). However, even if the statement is interpreted to be an invocation of appellant's right to remain silent, it is uncontroverted that appellant himself reinitiated conversation with the agents after the tape recorder was turned off. The principle underlying *Michigan v. Mosley* is that the suspect, rather than the police, controls the time, duration, and subject matter of an interrogation. 423 U.S. at 103–104, 96 S.Ct. 321. Officers do not fail to "scrupulously honor" an invocation of rights when they engage in conversation initiated by the suspect. *See State v. Kennedy*, 333 S.C. 426, 430, 510 S.E.2d 714, 716 (1998) ("[E]ven if this were a proper invocation of the right to counsel, petitioner waived this right when he initiated further

---

4. The trial court also found appellant's statement ambiguous: "Well, let me interrupt you. Did he invoke his right to silence or does that indicate that he had concluded telling the story? ... It sounds to me like it can be interpreted to mean, 'I have told you my story.'"

discussions."). The trial court did not err in ruling appellant's second statement voluntary.

Appellant asserts the trial court erred as a matter of law in failing to specifically rule on whether he invoked his right to remain silent when he said, "That's all I've got to say." Appellant's objection arises from the following comment made by the judge during the *Jackson v. Denno*[5] hearing:

> It is clear to me, it would be for the jury to determine, that this defendant did not say, "I terminate the conversations," he said, "I have concluded my statement," and that the testimony if believed by the jury, who will be the ultimate finder of the facts on the issue, that this defendant began the conversation again and not the interrogation by the officers.

Appellant argues this constitutes an impermissible delegation to the jury of a portion of the trial court's *Miranda* duties. We disagree. In the first place, appellant never requested a more specific ruling from the court as to whether his statement, "That's all I got to say" invoked his right to remain silent.

In any case, the trial judge ruled appellant was advised of his *Miranda* rights, knowingly and intelligently waived those rights, and that his statement was, beyond a reasonable doubt,

> freely and voluntarily given without duress, without coercion, without undue influence, without reward, without promise or hope of reward, without promise or hope of leniency, without threat of injury, and without compulsion or inducement of any kind, and that such alleged incriminating statement or confession was the voluntary product of the free and unconstrained will of the defendant.

The trial judge's extensive ruling regarding the voluntariness of the challenged statement fulfilled his duties under *Miranda*. The critical issue was not whether appellant invoked his right to remain silent after his first statement, but rather whether the second, inculpatory statement was voluntarily given. Even if one assumes appellant invoked his right to remain silent, his subsequent reinitiation of conversation validly waived that right. The judge did not err in failing to rule

---

**5.** 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

explicitly on the invocation issue because that issue was sub-sumed by the issue of the voluntariness of the statement. *See State v. Reed,* 332 S.C. 35, 43, 503 S.E.2d 747, 751 (1998) (appellant contended his invocation of the right to remain silent was not honored; the Court held the trial court did not err in denying the motion to suppress as the State met its burden of showing appellant's statement was voluntarily and freely given); *see also Woods v. Armontrout,* 787 F.2d 310, 315 (8th Cir.1986) (because trial court record was sufficient to establish voluntariness, subsidiary findings that police did not induce confession by coercion or promises implicitly made).

Furthermore, read in context, the judge's comment "it would be for the jury to determine" clearly referred to the jury's role as the ultimate fact finder on the issue of the voluntariness of appellant's statement. *See State v. Davis,* 309 S.C. 326, 342, 422 S.E.2d 133, 143 (1992), *overruled on other grounds by Brightman v. State,* 336 S.C. 348, 520 S.E.2d 614 (1999) ("Once the court determines that a defendant received and understood his rights, the court allows a confession into evidence. It then is for the jury ultimately to decide whether the confession was voluntary."). The trial court properly ruled appellant's confession voluntary, then submitted it to the jury for the final determination of voluntariness.

III. Did the trial court err in refusing to allow appellant to cross-examine Blackwell concerning dismissed indictments on narcotics charges?

Blackwell testified for the State as an eyewitness to the trooper's death. Appellant sought to cross-examine Black-well concerning her indictments on ten separate narcotics charges. Blackwell had pled guilty to one indictment, posses-sion of cocaine, and the other nine indictments were dismissed. The trial court refused to permit appellant to cross-examine Blackwell concerning the dismissed charges, but permitted appellant to proffer the questions for the record. During the proffer, Blackwell answered "I don't recall" to each of appel-lant's questions concerning the dismissed indictments.

The right to a meaningful cross-examination of an adverse witness is included in the defendant's Sixth Amend-ment right to confront his accusers. *State v. Smith,* 315 S.C. 547, 446 S.E.2d 411 (1994). This does not mean, however, that trial courts conducting criminal trials lose their usual discre-

tion to limit the scope of cross-examination. *See State v. Lynn*, 277 S.C. 222, 284 S.E.2d 786 (1981) (a trial court's ruling concerning the scope of cross-examination of a witness to test his credibility should not be disturbed on appeal absent a manifest abuse of discretion). On the contrary, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

The trial court did not abuse its discretion in limiting the scope of cross-examination to comply with the South Carolina Rules of Evidence. Rule 609 permits impeachment of a witness by evidence of *conviction* of certain crimes. Rule 609, SCRE. Prior bad acts which are not the subject of conviction, such as the dismissed indictments here, may only be inquired into, "in the discretion of the court, if probative of truthfulness or untruthfulness." Rule 608(b), SCRE. Narcotics offenses are generally not considered probative of truthfulness. *See, e.g., United States v. Turner*, 104 F.3d 217, 223 (8th Cir.1997) ("Misconduct involving violations of narcotics laws is not an act involving dishonesty or untruthfulness and therefore may not be inquired into under Federal Rule of Evidence 608(b)."). Nor are the dismissed indictments evidence of "bias, prejudice or any motive to misrepresent" under Rule 608(c). The trial court properly limited the scope of cross-examination to Blackwell's actual convictions.

IV. Did the trial court err by refusing to redact from appellant's statement references to a contract on his life?

 In his original statement to police, the one in which he blamed Blackwell for the trooper's murder, appellant said "I'm running from somebody who's got a contract on my life in New York." The trial court refused appellant's request to redact the statement as suggestive of mafia contacts. Appellant argues the reference was intended by the State to suggest appellant was a bad person with a propensity to commit murder.

 All relevant evidence is admissible. Rule 402, SCRE; *State v. Langley*, 334 S.C. 643, 515 S.E.2d 98 (1999). Evi-

dence is relevant if it has a direct bearing upon and tends to establish or make more or less probable the matter in controversy. Rule 401, SCRE; *State v. Alexander,* 303 S.C. 377, 401 S.E.2d 146 (1991). The trial judge is given broad discretion in ruling on questions concerning the relevancy of evidence, and his decision will be reversed only if there is a clear abuse of discretion. *Alexander, supra.* Although evidence is relevant, it may be excluded if the danger of unfair prejudice substantially outweighs its probative value. *Id.;* Rule 403, SCRE.

The trial court did not abuse its discretion in admitting appellant's statement he was running from someone with a contract on his life. The statement was relevant because it suggested appellant's motive for shooting the trooper. *See People v. Hayes,* 21 Cal.4th 1211, 91 Cal.Rptr.2d 211, 989 P.2d 645, 677 (1999) (appellant's statement regarding mafia connections introduced to establish effect on hearers, not to suggest bad character). Moreover, the single reference to someone with a contract on appellant's life does not necessarily suggest appellant is "a bad person with a propensity to commit murder" as argued by appellant in his brief. If it suggests mafia contact at all, it suggests appellant was perhaps an informant *against* the mafia. In that sense, it is clearly distinguishable from *Mitchell v. State,* 298 S.C. 186, 379 S.E.2d 123 (1989), where the solicitor introduced impermissible evidence of devil worship and mafia *membership* to suggest that Mitchell was a bad person with a propensity to commit the crime. *See also Commonwealth v. Scarfo,* 416 Pa.Super. 329, 611 A.2d 242, 271 (1992), *superseded by statute on other grounds,* (references to being "made" member of mafia, coupled with testimony that one must kill to become a "made" member, was prejudicial error).

█ Appellant also asserts the State had abundant evidence of his motive to commit the crime, including his statement he "panicked because I have problems in New York and Philadelphia that's why I ran," the existence of outstanding arrest warrants, and the stolen car and stolen license plate. Thus, appellant argues, the reference to a contract on his life was unnecessary to prove motive. We disagree. Part of appellant's defense was that his *modus operandi* when arrested was to use fake identification, make bond, and then fail to appear in court. In other words, he asserted to the jury that it would not make sense or be in character for him to shoot

the trooper to avoid arrest. However, appellant's statement, "Katherine said man, turn yourself in, OK it's minor crimes, but that's not what I'm really running from. I'm running from somebody who's got a contract on my life in New York," refutes this defense theory. The State was entitled to present this additional motive evidence because appellant argued the other motives suggested by the State were insufficient motives to kill a police officer.

We conclude appellant's statement was relevant to establish motive and this relevance was not outweighed by any prejudicial effect. *See I'On v. Town of Mt. Pleasant,* 338 S.C. 406, 526 S.E.2d 716 (2000) (appellate court may affirm for any reason appearing in the record).

## PROPORTIONALITY REVIEW

█ We have reviewed the entire record pursuant to S.C.Code Ann. § 16–3–25 (1985) and conclude the death sentence was not the result of passion, prejudice, or other arbitrary factors, and the evidence supports the jury's finding of the aggravating circumstance. The death sentence is not excessive or disproportionate to the penalty imposed in similar cases, where, as here, the single aggravating circumstance was death of a police officer. *See State v. Hughes,* 336 S.C. 585, 521 S.E.2d 500 (1999); *State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991); *State v. South,* 285 S.C. 529, 331 S.E.2d 775 (1985).

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.