# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

John Ernest Perry, Jr., Appellant.

Appellate Case No. 2017-002107

―――――――――

Appeal From York County
Paul M. Burch, Circuit Court Judge

―――――――――

Opinion No. 5816
Heard June 3, 2020 – Filed April 21, 2021

―――――――――

## REVERSED AND REMANDED

―――――――――

Chief Appellate Defender Robert Michael Dudek, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Deputy Attorney General William M. Blitch,
Jr., both of Columbia; and Solicitor Kevin Scott Brackett,
of York, all for Respondent.

―――――――――

**KONDUROS, J.:** John Ernest Perry Jr. appeals his conviction of attempted
murder. He maintains because he told the police his gun "went off" accidentally as
he attempted to dispose of the gun during a police chase, the trial court erred in
charging the jury "when the intent to do an act that violates the law exists, motive
becomes immaterial," because attempted murder was a specific intent crime and
this was essentially a general intent instruction. We reverse and remand.

## FACTS/PROCEDURAL HISTORY

Officers Dalton Taylor and Shaun Bailey of the Rock Hill Police Department were conducting a night patrol on June 22, 2016. Officer Taylor observed a vehicle turn without using a turn signal and in response initiated a traffic stop. The driver of the vehicle jumped out of the vehicle, without putting the vehicle into park, and ran from the scene. Officer Bailey and Officer Taylor pursued the driver on foot. The driver jumped a fence, and the officers followed him. As the driver was running, he pulled a firearm from his waistband. The driver fired two shots, which did not strike anyone.[1] According to Officer Taylor, he and the driver were about five to seven feet apart, and the area was sufficiently lit. Officer Taylor returned fire, striking the driver, but the driver continued to flee, and Officer Taylor lost sight of him.

Officers identified the driver as Perry from paperwork found in the vehicle and a video recording from a nearby convenience store. Law enforcement officers later took Perry into custody outside a camper in Fairfield County. Officers discovered in the camper the weapon Perry had fired.

A grand jury indicted Perry for attempted murder. At trial, Officer Taylor testified Perry fired directly at him once. Officer Taylor opined that it was not an accidental discharge and Perry was trying to shoot him in order to escape. On cross-examination, Officer Taylor acknowledged that his written statement about the incident provided that Perry fired the first shot in the air. He indicated he perceived Perry as pointing the weapon at him with the intent to kill. Officer Bailey testified he also pursued Perry and observed Perry fire twice in the air.

Special Agent Melissa Wallace from South Carolina Law Enforcement Division (SLED) testified she became involved with this case because it was an officer involved shooting. She provided she rode with Perry in the ambulance to the hospital after he had been apprehended. During the ambulance ride, she read Perry his *Miranda*[2] rights. He answered her questions during the ride and while he was at the hospital. He informed her that he had been involved in a shooting with police. He provided he had run because he had some unpaid warrants outstanding and he possessed the gun and knew he could not be caught with it. According to

---

[1] The evidence conflicts as to whether the first shot was fired in the air or in a "bladed position," whether the second shot was fired directly at Officer Taylor, and whether the gun accidentally went off.

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Special Agent Wallace, Perry stated "[h]e was jumping what he called the gate and the gun accidently went off while he was trying to get it out of his pants." She further noted Perry stated that as he was pulling the gun out, he had it "in front of his waist pointed towards the left-hand side of his body" when it went off. Perry also told Special Agent Wallace he threw the gun he used in the shooting in a field. SLED searched the field but did not recover a weapon there. Perry admitted in a subsequent interview the gun found in the camper was the gun he used in the incident.

Following the close of the State's case, Perry moved for a directed verdict, which the trial court denied. Perry did not present a defense. Following closing arguments, the trial court charged the jury on attempted murder and the lesser included offenses of assault and battery in the first, second, and third degree. The trial court informed the jury the attempted murder statute states, "A person who with intent to kill attempts to kill another person with malice aforethought, either express or implied, commits the offense of attempted murder." The court also described to the jury what malice meant.

Following deliberations, the jury requested to be recharged on attempted murder and the various degrees of assault and battery. The trial court repeated the jury charge it had previously given for those offenses, including the description of malice. After the jury resumed deliberations, the jury requested a copy of the charge on malice. The jury then asked if malice was only associated with the attempted murder charge or if it was also associated with the assault and battery charges. The attorneys and the court agreed it was only an element of attempted murder. The jury also asked, "What is meant by intent? It was not charged." The trial court proposed charging the jury with the definition of intent from *Black's Law Dictionary*, which stated: "The state of mind accompanying an act, especially a forbidden act. While motive is the inducement to do some act, intent is the mental resolution or determination to do it. When the intent to do an act that violates the law exists motive becomes immaterial." Perry stated, "I don't like the end of that with motive being in there," and the trial court indicated the last sentence could be left off. Perry continued, arguing "that's almost implying that use of a deadly weapon," before the trial court cut him off and stated it did not "see any need for that" sentence. However, the State argued because motive was not an element it had to prove, charging that sentence would not be prejudicial to Perry. The State asserted, "It says motive is immaterial, which we think motive is immaterial under the attempted murder statute . . . ." The trial court stated, "I mean as far as the last sentence. So the defense objects to the last sentence. I agree with the State, motive becomes immaterial so we'll note your objection and after I

charge it be sure and preserve the record again on it, okay?" The trial court charged the jury: "Intent. The state of mind accompanying an act, especially a forbidden act. While motive is the inducement to do some act, intent is the mental resolution or determination to do it. When the intent to do an act that violates the law exists motive becomes immaterial." The jury returned to its deliberations. Perry renewed his objection, stating:

> Your Honor, I just to renew my objection to the intent that you just read based on about the motive being immaterial. Also my concern is that attempted murder with case law out there saying that it is a specific intent crime, I mean, in my opinion is what was read was more of a general intent type of thing so that's my -- I'm objecting to the charge.

The court asked, "Your objection is with the last sentence?" and Perry responded, "That's correct, Your Honor." The court stated "based on what we've already discussed I see no reason to recharge and adjust that charge. But it is on the record."

Following a note from the jury, the trial court gave the jury an *Allen*[3] charge. The jury resumed its deliberations and ultimately reached a verdict. The jury convicted Perry of attempted murder. The trial court sentenced him to life imprisonment. This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate "[c]ourt is bound by the trial court's factual findings unless they are clearly erroneous." *Id.* "An appellate court will not reverse the trial [court]'s decision regarding a jury charge absent an abuse of discretion." *State v. Marin*, 415 S.C. 475, 482, 783 S.E.2d 808, 812 (2016) (quoting *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 584 (2010)). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

## LAW/ANALYSIS

---

[3] *Allen v. United States*, 164 U.S. 492 (1896).

Perry argues the trial court erred in instructing the jury that "when the intent to do an act that violates the law exists, motive becomes immaterial," as attempted murder is a specific intent crime, and this was essentially a general intent instruction and was highly prejudicial because he told the police his gun went off accidentally as he attempted to dispose of it during the police chase. We agree.

"[T]he trial court is required to charge only the current and correct law of South Carolina." *State v. Marin*, 415 S.C. 475, 482, 783 S.E.2d 808, 812 (2016) (alteration in original) (quoting *State v. Brandt*, 393 S.C. 526, 549, 713 S.E.2d 591, 603 (2011)). The trial court is required to charge the law as determined from the evidence presented at trial. *State v. Gates*, 269 S.C. 557, 561, 238 S.E.2d 680, 681 (1977). If any evidence supports a charge, it should be given. *State v. Burriss*, 334 S.C. 256, 262, 513 S.E.2d 104, 108 (1999). "[J]ury instructions should be considered as a whole, and if as a whole they are free from error, any isolated portions [that] may be misleading do not constitute reversible error." *State v. Aleksey*, 343 S.C. 20, 27, 538 S.E.2d 248, 251 (2000). A charge is correct if it adequately explains the law and contains the correct definition when read as a whole. *Brandt*, 393 S.C. at 549, 713 S.E.2d at 603. "In reviewing jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial." *Id.* (quoting *State v. Adkins*, 353 S.C. 312, 318, 577 S.E.2d 460, 463 (Ct. App. 2003)). "A jury charge [that] is substantially correct and covers the law does not require reversal." *Id.* "The substance of the law is what must be charged to the jury, not any particular verbiage." *Adkins*, 353 S.C. at 318-19, 577 S.E.2d at 464. "To warrant reversal, a trial [court]'s refusal to give a requested jury charge must be both erroneous and prejudicial to the defendant." *Brandt*, 393 S.C. at 550, 713 S.E.2d at 603 (quoting *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 583 (2010)).

"[S]ome principles of law should not always be charged to the jury." *State v. Perry*, 410 S.C. 191, 202, 763 S.E.2d 603, 608 (Ct. App. 2014); *see also State v. Burdette*, 427 S.C. 490, 503, 832 S.E.2d 575, 583 (2019) (stating some matters appropriate for jury argument are not proper for charging the jury). "Instructions that do not fit the facts of the case may serve only to confuse the jury." *State v. Blurton*, 352 S.C. 203, 208, 573 S.E.2d 802, 804 (2002); *see also id.* at 205, 208 n.1, 573 S.E.2d at 803, 804 n.1 (reversing a conviction even though a jury charge was a correct principle of law because it "was not warranted by the facts adduced at trial"). "The impression is sometimes gained that any language from an appellate court opinion is appropriate for a charge to any jury, but this is not always true." *State v. Grant*, 275 S.C. 404, 407, 272 S.E.2d 169, 171 (1980).

"Oftentimes a sentence, or sentences, taken from an appellate opinion must be supplemented by additional relevant statements of the law because of the particular factual situation." *Id.* "The test for sufficiency of a jury charge is what a reasonable juror would have understood the charge to mean." *State v. Hicks*, 330 S.C. 207, 218, 499 S.E.2d 209, 215 (1998). "Jury instructions by the court of irrelevant and inapplicable principles may be confusing to the jury and can be reversible error." *State v. Washington*, 338 S.C. 392, 400, 526 S.E.2d 709, 713 (2000).

When a jury submits a question to the trial court following a jury charge, "[i]t is reasonable to assume" the jury is "focus[ing] critical attention" on the specific question asked and that the information relayed by the trial court to the jury is given "special consideration." *State v. Blassingame*, 271 S.C. 44, 46-47, 244 S.E.2d 528, 529-30 (1978).

Attempted murder is codified as: "A person who, with intent to kill, attempts to kill another person with malice aforethought, either expressed or implied . . . ." S.C. Code Ann. § 16-3-29 (2015). In *State v. King*, 422 S.C. 47, 50, 810 S.E.2d 18, 19-20 (2017), our supreme court affirmed as modified this court's decision to reverse a conviction of attempted murder when the trial court charged the jury a specific intent to kill was not an element and "a general intent to commit serious bodily harm" was all that was required. The supreme court "agree[d] with the [c]ourt of [a]ppeals that 'the Legislature intended to require the State to prove specific intent to commit murder as an element of attempted murder, and therefore the trial court erred by charging the jury that attempted murder is a general intent crime.'" *Id.* at 55, 810 S.E.2d at 22 (quoting *State v. King*, 412 S.C. 403, 411, 772 S.E.2d 189, 193 (Ct. App. 2015), *aff'd as modified*, 422 S.C. 47, 810 S.E.2d 18 (2017), and *overruled on other grounds by Burdette*, 427 S.C. at 504 n.3, 832 S.E.2d at 583 n.3). The supreme court found:

> Because the phrase "with intent to kill" in section 16-3-29 does not identify what level of intent is required, the [c]ourt of [a]ppeals properly looked to the legislative history of section 16-3-29 and appellate decisions holding that "attempt crimes require the State to prove the defendant had specific intent to complete the attempted crime." *King*, 412 S.C. at 409, 772 S.E.2d at 192. Further, while we agree with the State that the

statement referenced from *Sutton*[4] constitutes dicta, it is still an accurate statement of law. *Id.* ("'Attempted murder would require the specific intent to kill,' and 'specific intent means that the defendant consciously intended the completion of acts comprising the [attempted] offense.'" (quoting *Sutton*, 340 S.C. at 397, 532 S.E.2d at 285)).

*King*, 422 S.C. at 55-56, 810 S.E.2d at 22 (last alteration by court).

The supreme court determined the two parts of section 16-3-29—"with intent to kill" and "malice aforethought"—needed to be addressed as they demonstrate "the General Assembly created the offense of attempted murder by purposefully adding the language 'with intent to kill' to 'malice aforethought, either express or implied' to require a higher level of *mens rea* for attempted murder than that of murder." *Id.* at 61, 810 S.E.2d at 25.

The supreme court further explained:

"The highest possible mental state for criminal attempt, specific intent, is necessary because criminal attempt focuses on the dangerousness of the actor, not the act." Thus, "[a]s the crime of attempt is commonly regarded as a specific intent crime and as it is logically impossible to attempt an unintended result, prosecutions are generally not maintainable for attempts to commit general intent crimes, such as criminal recklessness, attempted felony murder, or attempted manslaughter."

*Id.* at 56, 810 S.E.2d at 22-23 (alteration by court) (quoting 22 C.J.S. *Criminal Law: Substantive Principles* § 156 (2016)).[5]

---

[4] *State v. Sutton*, 340 S.C. 393, 532 S.E.2d 283 (2000).

[5] The lesser included offenses charged in this case were also attempt crimes. *See* S.C. Code Ann. § 16-3-600(C)(1) (2015) ("A person commits the offense of assault and battery in the first degree if the person unlawfully: . . . (b) offers or attempts to injure another person with the present ability to do so . . . ."); S.C. Code Ann. § 16-3-600(D)(1) (2015) ("A person commits the offense of assault and battery in the second degree if the person . . . offers or attempts to injure another person with the present ability to do so . . . ."); S.C. Code Ann. § 16-3-600(E)(1)

"Generally, motive is not an element of a crime that the prosecution must prove to establish the crime charged, but frequently motive is circumstantial evidence . . . of the intent to commit the crime when intent or state of mind is in issue." *State v. Sweat*, 362 S.C. 117, 124, 606 S.E.2d 508, 512 (Ct. App. 2004) (omission by court) (quoting Danny R. Collins, *South Carolina Evidence* 319 (2d ed. 2000)). "State of mind is an issue any time malice or willfulness is an element of the crime." *Id.* at 124-25, 606 S.E.2d at 512 (quoting Danny R. Collins, *South Carolina Evidence* 319 (2d ed. 2000)).

In *United States v. Hammond*, 642 F.2d 248, 249-50 (8th Cir. 1981), the Eighth Circuit Court of Appeals found a "prosecutor's statement of the law was misleading" when "[i]t suggested that motive had no relevance to the issues in this case, when in fact motive may have been very relevant to a determination of whether [the defendant] knowingly committed the acts charged in the indictment and purposely intended to violate the law by so doing." Additionally, the Eighth Circuit found "somewhat confusing" the following jury instruction by the trial court:

> I advise you that intent and motive should never be confused. Motive is what prompts a person to act. Intent refers only to the state of mind with which the act is done. Personal advancement and financial gain are two recognized motives for much of human conduct. These laudable motives or others may prompt one person to do voluntary acts of good, and others to do voluntary acts of crime.
>
> Good motive alone is never a defense where the act done or admitted is a crime. So the motive of the accused is

---

(2015) "(A person commits the offense of assault and battery in the third degree if the person . . . offers or attempts to injure another person with the present ability to do so."). Therefore, they also required specific intent. *See State v. McGowan*, 430 S.C. 373, 380, 845 S.E.2d 503, 506 (Ct. App. 2020) (holding for the attempt alternative of the statutory offense of assault and battery in the first degree, our case law provides "[t]o prove attempt, the State must prove that the defendant had the *specific intent* to commit the underlying offense, along with some *overt act*, beyond mere preparation, in furtherance of the intent" (quoting *State v. Reid*, 393 S.C. 325, 329, 713 S.E.2d 274, 276 (2011))).

immaterial except insofar as evidence of motive may aid determination of the state of mind or intent of the defendant.

*Id.* at 250. However, the Eighth Circuit ultimately affirmed the trial court, finding that when the instructions were read together with earlier portions of the charge, they correctly stated the law and sufficiently presented that element of the offenses to the jury. *Id.* at 250-51. It noted that although the trial court asked for any misstatements or errors and objections to any instructions it had given or had failed to give, the defendant did not object or request additional instructions and had earlier endorsed most of the instructions. *Id.*

In the present case, the trial court erred in the definition of intent it provided the jury. The State contended at trial because motive was not an element it had to prove, charging the last sentence of the definition would not be prejudicial to Perry. The State argued, "It says motive is immaterial, which we think motive is immaterial under the attempted murder statute . . . ." Because motive was not material, the mention of it in the definition of intent could have confused the jury. *See Washington*, 338 S.C. at 400, 526 S.E.2d at 713 ("Jury instructions by the court of irrelevant and inapplicable principles may be confusing to the jury and can be reversible error."); *see also Hicks*, 330 S.C. at 218, 499 S.E.2d at 215 ("The test for sufficiency of a jury charge is what a reasonable juror would have understood the charge to mean."). The jury could have found the sentence unclear when it had asked for the definition of intent. Because motive had not been mentioned during the trial, the jury could have been confused by the definition.

The trial court only referenced intent in the original jury instructions when describing the offense of attempted murder, defining the offense as when a "person who with intent to kill attempts to kill another person with malice aforethought, either express or implied."[6] The trial court repeated this same statement when the jury asked to be recharged on the offenses. In light of these limited statements about intent, we cannot say the trial court's later definition of intent in response to the jury's question was not misleading. *See Aleksey*, 343 S.C. at 27, 538 S.E.2d at 251 ("[J]ury instructions should be considered as a whole, and if as a whole they are free from error, any isolated portions [that] may be misleading do not constitute reversible error."); *see also Brandt*, 393 S.C. at 549, 713 S.E.2d at 603 (providing that in reviewing jury charges, a charge is correct if when read as a whole, it adequately explains the law and contains the correct definition); *id.* ("In reviewing

---

[6] Perry did not object to this charge nor request a *King* specific intent charge.

jury charges for error, we must consider the court's jury charge as a whole in light of the evidence and issues presented at trial." (quoting *Adkins*, 353 S.C. at 318, 577 S.E.2d at 463)).

Further, because the definition of intent was given in response to the jury's question, it was unduly emphasized as well, instead of just being part of the original instructions given. *See Blassingame*, 271 S.C. at 46-47, 244 S.E.2d at 529-30 (noting when a jury submits a question to the trial court following a jury charge, "[i]t is reasonable to assume" the jury is "focus[ing] critical attention" on the specific question asked and the information relayed by the trial court to the jury is given "special consideration"). Additionally, because attempted murder and the lesser included offenses are all specific intent crimes, the definition of intent could have been confusing for the jury because only specific intent was applicable here. Therefore, the trial court erred in its response to the jury's question about intent. Accordingly, the trial court is

**REVERSED AND REMANDED.**

**WILLIAMS and HILL, JJ., concur.**